

# LISTING AGREEMENT FOR SALE AT AUCTION
## Commercial

**LISTING AGREEMENT FOR SALE AT AUCTION** (the "Agreement") made and effective as of the latest date set forth below the signature lines appearing at the end of this Agreement (the "Effective Date"), between McCurdy Real Estate & Auction, LLC (McCurdy Real Estate & Auction, LLC, its brokers, agents, and employees, collectively "McCurdy") and Andover Senior Care, LLC, Debtor in Possession, Bankr. Case No. 22-10139-11 (the "Seller").

For and in consideration of the mutual promises, covenants, and payments hereinafter set out, the parties hereby agree as follows:

1. **REAL ESTATE OFFERED AT AUCTION:** Subject to the terms of this Agreement, McCurdy will market and offer for sale at public auction, the real estate commonly known as: 224 E. Central Ave., Andover KS 67002 and legally described as follows:

MEADOWS, (THE) 2ND ADD, S17, T27, R03E, ACRES 2.7, BEG SE/C LT 3 W40.7 N397.52 NW157.56 E80.01 S550 TO POB; LT 1 EXC E206 S257 BLK 1 MEADOWS 3RD ADD.

(the "Real Estate").

2. **TERM OF THE AGREEMENT:** This Agreement is exclusive and irrevocable for the period beginning on the Effective Date and ending 12/31/2022 (the "Termination Date").

3. **TERMS OF SALE:** The Real Estate will be offered and sold on a cash basis in its present, "as is, where is" condition with all faults. The sale of Real Estate will include all improvements thereon and appurtenances thereto belonging. The Real Estate will be offered for sale at public auction as follows (select one):

   \_\_\_\_\_ At a live, onsite auction incorporating simulcast bidding via McCurdy's online bidding platform.

   \_\_\_\_\_ At a live, offsite auction as part of a multi-property auction event incorporating simulcast bidding via McCurdy's online bidding platform.

   \_\_X\_\_ At online only auction offered through McCurdy's online bidding platform.

4. **AUCTION DATE:** In the event that the auction of the Real Estate is either a live, onsite auction or a live, offsite auction, then the date of the auction will be _____ at _____ \_\_\_\_.m. (the "Auction Date").

5. **ONLINE AUCTION DATE:** In the event that the auction of the Real Estate is an online only auction, then the auction will run from the following dates:

   Auction Start Time: _____ at _____ \_\_\_\_.m. (CST)

   Auction End Time: _____ at _____ \_\_\_\_.m. (CST)

6. **TYPE OF AUCTION:** The Real Estate will be offered and sold as follows (initial one):

   \_\_X\_\_ Absolute Auction: The Real Estate will be offered and sold at absolute auction with no minimum and no reserve. The Seller does not reserve the right to accept or reject the final bid. McCurdy does not represent, warrant, or guarantee the sale of the Real Estate or what the sale price may be. Seller acknowledges that the Real Estate may sell for less than Seller's expectations. McCurdy does not represent, warrant, or guarantee that the sale price of the Real Estate will be sufficient to pay any obligations of Seller secured by the Real Estate. In the event that the sale price of the Real Estate is insufficient to satisfy all secured amounts owing as to the Real

Estate, Seller will be required to provide funds at closing sufficient to satisfy any deficiency balance owing against the Real Estate. Seller and McCurdy have discussed the options for selling the Real Estate and, notwithstanding any potential risks associated with an absolute auction, believes that absolute auction is the best method by which to sell the Real Estate.

Auction with Reserve: The Real Estate will be offered at public auction with an established reserve amount (the "Reserve"). McCurdy does not represent, warrant, or guarantee the sale of the Real Estate, what the highest bid offered may be, or that the highest bid offered will meet or exceed the Reserve. Seller will accept any bid offered on the Auction Date at or above the Reserve and, if the Reserve for the Real Estate is met or exceeded on the Auction Date, Seller directs McCurdy to facilitate the sale of the property without any additional consultation with Seller. The Reserve for the Real Estate is:

7. **CONFIDENTIALITY OF PRICE OR RESERVE:** Seller acknowledges that discussions related to price or expectations with any third parties or disclosure of a reserve amount, if any, to any third parties is likely to harm the ability of McCurdy to maximize bids at auction. Seller accordingly agrees to keep any price expectations or reserve amounts confidential.

8. **ACCEPTING BIDS:** Notwithstanding anything in this Agreement to the contrary, Seller has the right, but not an obligation, to accept a bid for less than the Reserve.

9. **OBLIGATIONS OF MCCURDY:** McCurdy will perform the terms of this Agreement, promote the interests of the Seller with the utmost good faith, loyalty, and fidelity, and present all offers, counteroffers, and back-up offers in a timely manner. A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in any other customary manner. As described below, at the completion of the auction, McCurdy will present a contract for sale of the Real Estate to the highest bidder at the auction. Upon execution of a contract for sale of the Real Estate, Seller desires that McCurdy cease marketing the Real Estate, but submit any offers received.

10. **BUYER'S PREMIUM:** There will be a 10% buyer's premium ($1,500.00 minimum) added to the final bid offered for the Real Estate (the "Buyer's Premium") and the total purchase price for the Real Estate will consist of the final bid plus the Buyer's Premium. All pre-auction offers, or post-auction offers procured as a direct result of the auction, will be subject to the Buyer's Premium. For all sales subject to the Buyer's Premium, McCurdy will be paid a fee equal to the Buyer's Premium. The Seller authorizes McCurdy to divide such compensation with any cooperating brokers in any manner acceptable to McCurdy. In the event that the secured creditor (the "Secured Creditor") is the winning bidder pursuant to their right to credit bid, the Buyer's Premium will be 5% ($1,500 minimum) added to the final bid and the total purchase price for the Real Estate will consist of the final bid plus the 5% Buyer's Premium. If the Secured Creditor is the winning bidder, the entire 5% Buyer's Premium shall be paid solely to McCurdy and there will be no offer of compensation to any cooperating brokers. Any transaction broker fee or broker's consultation fee will be paid by Secured Creditor and will not be deducted from the 5% Buyer's Premium.

11. **MARKETING EXPENSES:** The marketing expenses related to the Real Estate is $10,000. This amount is (select one): ■ only an estimate; or ☐ a flat fee. Seller is responsible for the marketing expenses incurred by McCurdy regardless of whether the Real Estate is ultimately sold under the terms of this Agreement. In the event that the Real Estate is sold while this Agreement is in effect, Seller authorizes the deduction of any unpaid marketing expenses from the proceeds of the sale at closing. Marketing expenses will be (select one):

    __X__ paid in advance.

    _____ paid out of sale proceeds at closing.

12. **NO-SALE AND COMMISSION SCHEDULE:** There will not be a "no-sale" fee charged in the event that the Real Estate fails to sell at auction. If the Real Estate does not sell at auction, Seller will provide McCurdy a listing price for the Real Estate immediately after the conclusion of the auction. If, within 5 business days of the Auction Date or the Auction End Time as the case may be, the Real Estate is not under contract, the listing will convert to a traditional listing for sale and the following will occur:

    a. McCurdy will update the Multiple-Listing Service to reflect the traditional listing; and
    b. The Buyer's Premium will be abandoned and McCurdy will be paid a fee equal to the greater of the following:
        i. 6% of the sale price of the Real Estate; or
        ii. $1,500.00.

13. **RIGHT TO COMPENSATION:** Seller authorizes the deduction of McCurdy's compensation from the proceeds of the sale at closing. McCurdy will be entitled to compensation under the terms of this Agreement if McCurdy produces a ready, willing, and able buyer for the Real Estate at auction or, in the event that the Real Estate is not sold at auction, within the term of this Agreement. McCurdy

will be entitled to a commission equal to either 10% of the sale price of the Real Estate, or 5% of the sale price of the Real Estate as provided in Paragraph 10 above, or, in the event that the listing has converted to a traditional listing as set forth in paragraph 12, equal to the commission schedule set forth in paragraph 12 of this Agreement, if the Real Estate:

a. Is sold, leased, exchanged, conveyed, or otherwise transferred on or before 90 days after the Termination Date to anyone whose name appears on a written list provided to Seller prior to the Termination Date by McCurdy and:
  i. with whom the McCurdy has negotiated; or
  ii. to whom McCurdy has shown the Real Estate;
b. Is sold, leased, exchanged, conveyed, or otherwise transferred on or after the Effective Date and on or before the Termination Date; or
c. Is removed from auction by the Seller or this Agreement is otherwise terminated by Seller prior to the Termination Date. For the purposes of determining commission due McCurdy under subparagraph 14.c., the sale price will be, at the sole discretion of McCurdy, either the assessed value of the Real Estate by the County Appraiser or the appraised value determined by a licensed, private appraiser selected by McCurdy. The cost of any appraisal performed in accordance with this paragraph will be paid by McCurdy.

**14. RIGHT TO WITHDRAW REAL ESTATE FROM SALE:** Notwithstanding anything in this Agreement to the contrary, in the event that Seller elects to proceed with an "absolute auction," then Seller retains the right to withdraw the Real Estate from the scheduled auction under the following conditions:

a. Immediately prior to the scheduled start time for the auction on the Auction Date, Seller or Seller's representative may confer with McCurdy about the number of registered or anticipated bidders for the auction;
b. In the event that Seller decides that the number of registered or anticipated bidders presents an unacceptable risk, then Seller may elect not to proceed with the scheduled auction;
c. Should the Seller elect to exercise their right to withdraw the Real Estate from the auction under this paragraph, then the sale will be treated as a "no-sale" under paragraph 12 of this Agreement; and
d. The right to withdraw real estate described in this paragraph does not apply to online only auctions.

**15. STRUCTURAL DEFECTS AND HAZARDOUS SUBSTANCES:** Seller represents and warrants that, except as otherwise specified below: there are no known material physical, structural, or mechanical defects in the Real Estate; there are no known hazardous substances, pollutants, or contaminants on the Real Estate, the presence or disposal of which is subject to federal, state, or local environmental regulation; and there is no equipment, storage tank, container, or structural element on the Real Estate that contains or utilizes, and has released or could release, any such hazardous substance, pollutant, or contaminant unless disclosed herein:

_____
_____
_____

**16. REAL ESTATE BROKER COOPERATION:** The Seller authorizes McCurdy to offer cooperation and compensation with other brokers subject to the provisions of Paragraph 10. The Seller agrees that McCurdy may not offer cooperation or compensation to sub-agents. The Seller agrees that McCurdy may offer cooperation and compensation to Transaction Brokers and to Buyer's Agents.

**17. BROKERAGE RELATIONSHIP DISCLOSURE:** Seller acknowledges receiving the Real Estate Brokerage Relationships brochure. Seller understands that McCurdy may show alternative properties not owned by Seller to prospective buyers, and may list competing properties for sale without breaching any duty or obligation to Seller. McCurdy will function solely as Seller's agent and will not offer designated agency.

**18. TRANSACTION BROKER:** In the event that the Real Estate fails to sell at auction and this listing is converted to a traditional listing, McCurdy may have clients who have retained McCurdy to represent them as a buyer in the acquisition of property. If a buyer client becomes interested in making an offer on the Real Estate, then McCurdy would be in a position of representing both buyer and Seller in that transaction. Such representation would constitute dual agency, which is illegal in Kansas. With the informed consent of both buyer and Seller, McCurdy may act as a transaction broker. As a transaction broker, McCurdy would assist the parties with the real estate transaction without being an agent or advocate for the interests of either party. Seller consents to transaction brokerage, subject to both buyer and Seller signing a Transaction Broker Addendum to their agency agreement with McCurdy, which must be signed by the buyer prior to writing an offer to purchase the Real Estate and by Seller prior to signing the purchase contract.
(select one) _____Yes __x__No

**19. SELLER'S OBLIGATIONS:** The Seller agrees to:

a. Refer all inquiries and offers received during the term of this Agreement to McCurdy;
   b. Thoroughly review the listing and marketing information prepared by McCurdy and advise McCurdy immediately of any errors or omissions;
   c. Provide McCurdy a key to the Real Estate and, in the event that the Real Estate is tenant occupied, coordinate access to the Real Estate for showings or open houses;
   d. Refrain from encumbering the Real Estate or taking any action that could cause an encumbrance of the Real Estate from the Effective Date of this Agreement to the closing of the transaction;
   e. Maintain any utility service to the Real Estate active as of the Effective Date of this Agreement throughout the term of this Agreement or until final settlement of a sales transaction, whichever is earlier;
   f. Maintain insurance, if any, on the Real Estate during the term of this Agreement or until final settlement of a sales transaction, whichever is earlier;
   g. Refrain from bidding on the Real Estate at the auction, or directing anyone else to bid on Seller's behalf;
   h. Divide equally with McCurdy any earnest money deposited with a contract and subsequently forfeited by a buyer, but not in excess of the amount to which McCurdy would be entitled had the transaction closed;
   i. Execute the Contract for Purchase and Sale of the Real Estate after it is executed by the highest bidder after the auction; and
   j. Execute all documents, including, but not limited to, a good and sufficient deed, necessary to convey the Real Estate to the buyer.

**20. SIGNAGE:** Seller gives McCurdy the right to place a sign on the Real Estate advertising that the property is to be sold at auction or is for sale and to remove any other signs during the term of this Agreement.

**21. SELLER'S DISCLOSURES:** Seller has been advised and understands that the law requires disclosure of any known material defect in the Real Estate to prospective buyers and that failure to do so may result in civil liability for damages. Seller represents and warrants that the information provided to McCurdy as well as the information provided in this Agreement is true and correct according to the Seller's best knowledge and belief. Seller further stipulates that the age of the property and the dimensions of the lot as shown on the listing information are accurate to the best of Seller's knowledge. Notwithstanding anything herein to the contrary, to the extent any warranties or representations may be found to exist with regards to the Real Estate, the warranties or representations are between Seller and the buyer of the Real Estate. Seller agrees to hold McCurdy and any cooperating brokers and agents harmless from any damages, costs, attorney fees, or expenses whatsoever arising by reason of Seller's: failure to disclose any pertinent information; providing incorrect information; or breach of any terms and conditions of this Agreement.

**22. LENDING INSTITUTIONS:** Seller authorizes McCurdy to contact any lending institution, mortgage holder, or other individual or entity claiming any secured interest in the Real Estate to obtain any information which may be appropriate.

**23. DISCLOSURE OF INFORMATION:** McCurdy will disclose to Seller all adverse material facts actually known by McCurdy about bidders or buyers and advise Seller to obtain expert advice as to material matters known by McCurdy but the specifics of which are beyond McCurdy's expertise. When Seller has been so advised, no cause of action for any person may arise against McCurdy pertaining to such material matters. McCurdy will disclose to any customer and Seller any adverse material facts actually known by McCurdy, related to the physical condition of the property, which contradicts any information included in a written report that has been prepared by a qualified third party and provided to a customer or Seller. McCurdy owes no duty to conduct an independent inspection of the Real Estate to verify accuracy or completeness of any statements made by Seller or any qualified third party. McCurdy will account in a timely manner for all money and property received. McCurdy will comply with all requirements of the Brokerage Relationships in Real Estate Transactions Act of Kansas, comply with any applicable federal, state, and local laws, rules, regulations and ordinances, including fair housing and civil rights statutes, rules, and regulations. McCurdy will keep all information about Seller confidential unless disclosure is required by statue, rule, or regulation, or unless failure to disclosure would constitute fraudulent misrepresentation. McCurdy will disclose to any customer all adverse material facts actually known by McCurdy, including but not limited to: environmental hazards affecting the Real Estate which are required by law to be disclosed; the physical condition of the Real Estate; any material defects in the Real Estate or title thereto; or any material limitations on the Seller's ability to perform under the terms of the contract.

**24. RIGHT TO ENTER REAL ESTATE:** McCurdy or other licensed brokers or salespersons may enter the Real Estate at reasonable times for showings to prospective buyers or to facilitate inspections or appraisals. McCurdy may place a Multiple Listing Service lock box or combination lock box on the premises during the term of this Agreement or until final settlement of a sales transaction, whichever is later. Seller understands and agrees that, as part of marketing the Real Estate, McCurdy will be showing buyers properties other than Seller's and providing buyers with information on selling prices in the area.

**25. RESPONSIBILITY FOR REAL ESTATE:** McCurdy is not responsible for vandalism, theft, or damage of any nature to the Real Estate.

**26. INDEMNIFICATION:** Seller agrees to waive, release, indemnify, and hold harmless McCurdy against any and all losses, claims, damages, liabilities, or expenses, including costs of investigation, attorneys' fees, and disbursements, which may be incurred by McCurdy

Seller's Initials _____

relative to the Real Estate, the performance of McCurdy's obligations under this Agreement, or the auction or sale contemplated by this Agreement. The provisions of this paragraph will survive the termination of this Agreement.

**27. ONLINE BIDDING PLATFORM:** McCurdy is not responsible for any errors or omissions relating to the submission or acceptance of online bids. McCurdy makes no representations or warranties as to the online bidding platform's uninterrupted function or availability and makes no representations or warranties as to the online bidding platform's compatibility or functionality with any particular bidder's hardware or software. Neither McCurdy or any individual or entity involved in creating or maintaining the online bidding platform will be liable for any damages arising out of the use or attempted use of the online bidding platform, including, but not limited to, damages arising out of the failure, interruption, unavailability, or delay in operation of the online bidding platform.

**28. DISSEMINATION OF REAL ESTATE INFORMATION:** Seller authorizes McCurdy to distribute information concerning this property to any website, in McCurdy's sole discretion, including, but not limited to, any site operated by the National Association of REALTORS® or McCurdy. It is further understood and agreed that McCurdy will submit pertinent information concerning the Real Estate to the Multiple-Listing Service ("MLS") of the South Central Kansas Association of REALTORS® in accordance with its rules and regulations. Seller acknowledges and understands that the sales data or expiration data can and may be distributed at the discretion of the South Central Kansas Association of REALTORS® to its authorized members, and authorizes McCurdy to release all data on the Real Estate. McCurdy will timely furnish MLS notice of all changes of information concerning the Real Estate as authorized by the Seller. The Seller authorizes McCurdy to notify MLS of a signed sales contract on the Real Estate and authorizes the dissemination to others, including the County Appraiser, of sales information (including the sales price after the closing of the sale) to be used in establishing market value for other properties.

**29. PROMOTIONAL MATERIAL:** Seller authorizes the future use by McCurdy of any information regarding the marketing and sale of the Real Estate for promotional purposes. Information that may be used for promotional purposes, includes, but is not limited to, the following: films, photographs, or recordings of the auction; marketing material created by McCurdy related to the Real Estate; the sales price of the Real Estate; and any testimonials or comments offered by the Seller.

**30. FAIR HOUSING:** The Real Estate will be offered, shown, and made available for inspections and sale to all persons without regard to race, color, national origin, religion, sex, familial status, or disability.

**31. MISCELLANEOUS AUCTION DETAILS:** Seller acknowledges and consents to the following:

   a. McCurdy will market the Real Estate in accordance with a marketing plan created by McCurdy based on McCurdy's professional skill and judgment;
   b. The auction will be conducted in accordance with terms and conditions created by McCurdy, a copy of which is available at Seller's request;
   c. The terms and conditions governing online bidders will be substantially the same as those governing onsite bidders;
   d. Seller may not accept, nor direct McCurdy to accept, bids after the close of the auction of the Real Estate;
   e. To the extent permitted under applicable law, McCurdy has the right to establish all bidding increments at the auction; and
   f. McCurdy may, in its sole discretion, reject, disqualify, or refuse any bid believed to be fraudulent, illegitimate, not in good faith, made by someone who is not competent, or made in violation of the terms and conditions governing the auction or applicable law.

**32. CONTRACT FOR PURCHASE AND SALE:** McCurdy will present its standard Contract for Purchase and Sale (the "Contract") to the highest bidder after the close of the auction of the Real Estate. If the highest bidder fails or refuses to execute the Contract, then McCurdy is permitted to contact other bidders and Seller agrees to execute a Contract with any bidder whose bid is equal to or greater than the highest bidder's bid. McCurdy will not, under any circumstances, be held liable to either Seller or a prospective buyer for either party's failure or refusal to sign the Contract. Seller agrees to waive, release, indemnify, and hold harmless McCurdy from and against any claims, losses, damages, liabilities, or expenses, including but not limited to, attorneys' fees, resulting from either Seller or prospective buyer's failure or refusal to sign or abide by the Contract. The provisions of this paragraph will survive the termination of this Agreement.

**33. AUTHORITY:** Each person executing this Agreement warrants and represents that they are fully authorized to do so.

**34. BINDING EFFECT:** This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, heirs, executors, administrators, successors, and assigns.

**35. GOVERNING LAW, VENUE, AND JURISDICTION:** This Agreement is to be governed by and construed in accordance with the laws of Kansas, but without regard to Kansas's rules governing conflict of laws. Exclusive venue for all disputes lies in either the United States Bankruptcy Court for the District of Kansas, Sedgwick County Kansas District Court or the United States District Court in Wichita, Kansas. The parties submit to and accept the jurisdiction of such courts.

**36. WAIVER OF JURY TRIAL:** The parties waive the right to trial by jury in all matters regarding this Agreement.

**37. MODIFICATION AND NON-WAIVER:** This Agreement may be amended only by an agreement, in writing, signed by all the parties. A failure by either party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof will not constitute a waiver of any such breach or any other covenant, duty, agreement, or condition. A waiver upon one or more occasion will not constitute a bar or a waiver of any right or remedy on any future occasion.

**38. SEVERABILITY:** In the event that any provision contained in this Agreement is determined to be invalid, illegal, or unenforceable by a court of competent jurisdiction, the validity, legality, and enforceability of the remaining provisions of the Agreement will not be in any way impaired.

**39. FURTHER ACTS:** The parties agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents or take such other action as may be reasonably necessary or convenient to carry out the intent and purpose of this Agreement.

**40. MERGER:** This Agreement constitutes the entire agreement between the parties and supersedes any previously executed contracts and representations, verbal or written.

**41. INTERPRETATION:** The headings used in this Agreement are for convenience only and do not constitute a part of this Agreement. All references in the singular are to be construed to include the plural where applicable and the masculine to include the feminine or neuter gender where applicable, and all covenants, agreements, and obligations herein assumed by the parties are joint and several covenants, agreements, and obligations. The language used in this Agreement is to be deemed to be the language chosen by the parties to express their mutual intent and no rule of strict construction is to be applied against any party. If any date under this Agreement on which an event is to occur or notice is to be given falls on a Saturday, Sunday, or federal holiday, then such date will be the first business day following such Saturday, Sunday, or federal holiday.

**42. SIGNATURE BY ELECTRONIC MAIL AND IN COUNTERPART, AGREEMENT TO USE ELECTRONIC SIGNATURES:** This Agreement may be executed in any number of counterparts, and each such counterpart will be deemed to be an original instrument, but all such counterparts together will constitute one Agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or as a PDF attached to an email will constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. The parties agree that this transaction may be conducted through electronic means in accordance with the Kansas Uniform Electronic Transactions Act (K.S.A. § 16-1601 *et seq.*).

**43. SELLER'S COPY:** Seller acknowledges receiving a copy of this Agreement for Seller's records.

Copyright © 2021 McCurdy Real Estate & Auction, LLC

(Remainder of this page intentionally left blank)

IN WITNESS WHEREOF, the parties have executed this Agreement on the dates set forth below.

**SELLER:**

| Signature | Date | | Signature | Date |
|---|---|---|---|---|
| *Dennis L. Bush* | | | *Debie Bush* | |
| Print | | | Print | |

| Managing Member | Andover Senior Care, LLC, Debtor in Possession, Bankr. Case No. 22-10139-11 | | Member | Andover Senior Care, LLC, Debtor in Possession, Bankr. Case No. 22-10139-11 |
|---|---|---|---|---|
| Title | Company | | Title | Company |

Street Address (Seller Mailing Address)    Street Address (Seller Mailing Address)

City    State    Zip        City    State    Zip

Cell Phone    Home Phone        Cell Phone    Home Phone

Work Phone    Fax        Work Phone    Fax

Email        Email

**MCCURDY REAL ESTATE & AUCTION, LLC:**

By    Date
12041 E. 13th St. N.
Wichita, Kansas 67206
Office: (316) 867-3600
Fax: (316) 683-8822
Pre-Auction Manager Email: kcox@mccurdy.com

# PROPERTY TAX INFORMATION



Database was last updated on 04/12/2022

Return To County Website     Logout

## Tax Statement Details

| | | | |
|---|---|---|---|
| Type | CAMA Number | Tax Identification | |
| RL | 304 17 0 30 03 002 02 0 01 | 001-1217111 | |
| Owner ID | ANDO00099 ANDOVER SENIOR CARE LLC | | Current Taxes |
| Taxpayer ID | ANDO00099 ANDOVER SENIOR CARE LLC | | Current Real Estate Detail |
| 0 E CENTRAL | | 67002 | GIS Map |
| Subdivision MEADOWS, (THE) 2ND ADD | Block    Lot(s) | Section 17   Township 27   Range 03 | Print Friendly Version |

**Statement # 0078347**

### Details

| | |
|---|---|
| Total Assessed Value: | $425,690.00 |
| Total Mill Levy: | 160.77600 |
| General Tax: | $68,394.74 |
| Specials: | $0.00 |
| Total Tax: | $68,394.74 |
| Received To Date: | $34,197.37 |
| Balance: | $34,197.37 |
| Interest To Date: | $0.00 |
| Fees: | $0.00 |
| Total Due: | $34,197.37 |

**Taxes by Tax Districts**



ANDOVER
BCCC- GENERAL
BUTLER COUNTY
STATE OF KANSAS
USD 385

0.9%
20.4%
9.5%
27.3%
41.9%

### Receipt Information

| Receipt # | Date | Tax Year | Tax | Int/Fee |
|---|---|---|---|---|
| 633715 | 12/10/2021 | 2021 | $34,197.37 | $0.00 |

For delinquent tax pay off amount contact Butler County Treasurer 205 W. Central Ave, El Dorado, KS 67042, (316) 322-4210

Back To Search Results     Back To Search Criteria