Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1



# BID ACKNOWLEDGEMENT & OUTLINE OF FINANCIAL TERMS OF SALE

Property Address: _224 E. Central Ave- Andover, KS 67002_____ (the "Real Estate")

The bid amount for the Real Estate: $ 2,785,000.00

plus 10% Buyer's Premium ($1,500 minimum): $ 278,500.00

**TOTAL PURCHASE PRICE**: $ 3,063,500.00

The balance of the Total Purchase Price must be paid in full at closing in immediately available, certified funds. Buyer's obligation to close is not contingent upon Buyer's ability to obtain financing. Buyer acknowledges that, by bidding on the Real Estate and by signing this Bid Acknowledgement & Outline of Financial Terms of Sale, Buyer has read, understands, and agrees to be bound by the Terms and Conditions governing the auction of the Real Estate.

Buyer _*Osaginwen Ayiyi, Managing Member*_____ 11/30/2022

_Print_ Called To Care Investments Kansas LLC by Osaginwen Ayiyi, Managing Member   Date

Buyer _____

_Print_ _____   Date

Seller _*Dennis L. Bush, Managing Member*_____ 12/05/2022

_Print_ Andover Senior Care, LLC, Debtor in Possession, Bankr.Case #22-10139-11 by Dennis L. Bush, Managing Member   Date

Seller _____

_Print_ _____   Date

**EXHIBIT A**

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1



# CONTRACT FOR SALE AND PURCHASE
## Commercial Real Estate

This **CONTRACT FOR SALE AND PURCHASE** (the "Contract") is made and is effective as of the latest date set forth below the signature lines appearing at the end of this Contract (the "Effective Date") by and between:

Andover Senior Care, LLC, Debtor in Possession, Bankr. Case No. 22-10139-11 (the "Seller")

and

Called To Care Investments Kansas LLC by Osaginwen Ayiyi, Managing Member _____ or assigns (the "Buyer")

For and in consideration of the mutual promises, covenants, and payments hereinafter set out, the parties hereby agree to and with each other, as follows:

**1.  PROPERTY**: Subject to the terms of this Contract, Seller agrees to sell and Buyer agrees to purchase the real estate commonly known as: 224 E. Central Ave., Andover, KS 67002, and legally described as follows:

See Attached Exhibit A

including the improvements thereon and appurtenances thereto belonging (the "Real Estate").

**2.  PURCHASE PRICE:** Buyer agrees to pay to Seller as consideration for the promises and covenants made herein and conveyance of the Real Estate, the sum of $ __3,063,500.00_____ (the "Purchase Price"), payable as follows:

 **a.** Subject to paragraph 22, concurrently with the execution of this Contract, the Buyer must deposit with Security 1ˢᵗ Title (Company Name), non-refundable earnest money in the form of (select one): □ cash; □ check; or □ immediately available, certified funds; and in the amount of $___200,000.00_____(the "Earnest Money"), as security for the performance of the Buyer's obligations under this Contract. The Earnest Money will be applied to the Purchase Price at closing.

 **b.** The balance of the Purchase Price is due in immediately available, certified funds at closing.

**3.  CLOSING AND POSSESSION:** Buyer agrees to close on ____January 16, 2023_____. Buyer and Seller will have the necessary funds available to close this Contract, payable by immediately available, certified funds, at closing. Possession of the Real Estate will be delivered to Buyer at closing subject to existing tenant rights if applicable. In any event, the act of closing by Buyer constitutes an ABSOLUTE AND IRREVOCABLE ACCEPTANCE of the Real Estate in whatever condition and any title to the same without regard to marketability or any related title matter.

**4.  AGENCY DISCLOSURE:** Seller and Buyer agree that brokers, identified in the Real Estate Agency Disclosure(s) included in this Contract, is (are) the only real estate brokers negotiating this sale, and Seller agrees to pay Commission Rate or Buyers Premium pursuant to the agreement between Seller and brokers. McCurdy Real Estate & Auction, LLC ("McCurdy") is functioning as a Seller's Agent.

*(Co-Op/Referring Broker/Licensee – if applicable) – Selling Side*
N/A _____ of N/A _____ is functioning as N/A _____

Any party to this Contract through whom a claim to any broker's, finder's or other fee is made, contrary to the representations made above in this paragraph, will indemnify, defend, and hold harmless the other party to this Contract from any other loss, liability, damage, cost or expense, including, without limitation, reasonable attorney's fees, court costs, and other legal expenses paid or incurred by the other party, that is in any way related to such a claim. The provisions of this paragraph will survive closing or termination of this Contract. Seller and Buyer acknowledge receipt of the Real Estate Brokerage Relationships brochure.

**5.  CONVEYANCE:** Seller will convey title to the Real Estate to Buyer, at closing, free of all encumbrances, except: the permitted exceptions (as defined in this Contract); easements, restrictions, declarations, and reservations of record, if any; taxes and assessments, general and special, not now due and payable; the rights of the public in and to parts thereof in streets, roads, and alleys; zoning or other land use rules, regulations, ordinances, or laws; and existing tenant rights, if any.

Buyer's Initials _____ OA
Version 12/2021

Case 22-10139 Doc# 253-1 Filed 12/15/22 Page 2 of 24

Seller's Initials _____  DLB

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

**6. FINANCING AND APPRAISER/LENDER REQUIREMENTS:** The Real Estate is being sold on a cash basis. The Buyer's obligations under this Contract are not contingent on Buyer obtaining financing or on any appraiser or lender requirements. It is the Buyer's sole responsibility to satisfy any appraiser or lender requirements.

**7. "AS IS, WHERE IS" SALE:** The Real Estate was offered or sold at public auction, and is accepted by Buyer in its present, "as is, where is" condition with all faults. The Real Estate is accepted by the Buyer without any expressed or implied warranties or representations from the Seller or Seller's agents, including, but not limited to, the following: the condition of the Real Estate; the Real Estate's suitability for any or all activities or uses; the Real Estate's compliance with any laws, rules, ordinances, regulations, or codes of any applicable government authority; the Real Estate's compliance with environmental protection, pollution, or land use laws, rules, regulations, orders, or requirements; the disposal, existence in, on, or under the Real Estate of any hazardous materials or substances; or any other matter concerning the Real Estate. It was incumbent upon Buyer to exercise Buyer's own due diligence, investigation, and evaluation of suitability of use for the Real Estate prior to bidding on the Real Estate. It was Buyer's responsibility to have any and all desired inspections completed prior to bidding, including, but not limited to, inspections of the following: roof; structure; termite; wood infestation, environmental; survey; encroachments; groundwater; flood designation; presence of lead-based paint or lead based paint hazards; presence of radon; presence of asbestos; presence of mold; electrical; appliances; heating; air conditioning; mechanical; plumbing (to include water well, septic, or lagoon compliance); sex offender registry information; flight patterns, and any other desired inspection, if any. Buyer acknowledges that Buyer was provided an opportunity to inspect the Real Estate prior to the execution of this Contract and that Buyer either performed all desired inspections or accepts the risk of not having done so. Information given is from sources deemed reliable but not guaranteed by the Seller or McCurdy. Buyer acknowledges that any information provided or to be provided by Seller or McCurdy was obtained from a variety of sources. Seller and McCurdy have not made any independent investigation or verification of the information and make no representations as to its accuracy or completeness. In executing this Contract, Buyer is relying solely on Buyer's own investigation of the Real Estate and not on any information provided or to be provided by Seller or McCurdy. Neither Seller nor McCurdy will be liable or bound in any manner by any verbal or written statements, representations, or information pertaining to the Real Estate which are not contained in this Contract or in Seller's deed.

**8. PRORATIONS:** All ad valorem taxes, the current annual installment of special assessments, and rentals (collected or uncollected with deposits transferring to Buyer) will be adjusted and prorated as of closing date, unless otherwise agreed. General taxes will be prorated for the calendar year on the basis of taxes for the previous year unless the previous year's assessed valuation was based on a lesser-improved property, in which case taxes will be determined from the assessed valuation and the officially-established mill levy prevailing at closing. Special assessments will be prorated on the basis of the amount (for the calendar year) ascertainable at the time of closing by the closing agent. Pursuant to Kansas laws, if the Real Estate is subject to any special assessments or is located in an improvement or benefit district, Seller has, by a separate document, disclosed to Buyer the amount of the special assessments on the Real Estate (or if no special assessments have yet been made, that the Real Estate is located in an improvement or benefit district) which separate document has been dated and signed by Seller. Buyer, by also signing and dating such separate document, has acknowledged that Seller's disclosure relating to special assessments was made to Buyer prior to this Contract being entered into.

**9. INSURANCE:** Seller will maintain current insurance, if any, in force until closing. Buyer will be solely responsible for obtaining insurance to cover any casualty loss occurring after closing, even if possession is retained by Seller after closing.

**10. CASUALTY LOSS:** If the Real Estate is damaged by casualty before closing and the estimated cost of repair is less than 10% of the Purchase Price, then Seller must repair the damage or compensate Buyer for the cost of repair. If the estimated cost of repair is greater than 10% of the Purchase Price, then the parties will bargain in good faith to renegotiate this Contract. If the renegotiation is unsuccessful, then either Buyer or Seller may cancel this Contract and the earnest money will be refunded promptly to the Buyer and all parties will be released from any further obligation.

**11. TITLE EVIDENCE:** The Seller will furnish to Buyer a title insurance company's commitment to issue, after closing, a title insurance policy in an amount equal to the Purchase Price naming Buyer as the insured and insuring Buyer against loss or damage by reason of defects in Seller's title, subject to the exceptions in this Contract or those exceptions that are standard to American Land Title Association's Form B (collectively, the "Permitted Exceptions"). The Seller and Buyer will each pay one half the cost of the title insurance. In the event Seller is entitled to a discount, the Seller will receive the full discount. Notwithstanding anything herein to the contrary, Seller has the right to extend closing by up to 30 days in order to attempt to cure any defects in Seller's title. Should the Seller be unable to furnish marketable title to the Real Estate, subject to only the Permitted Exceptions, and should the Contract be terminated for that reason, then the Earnest Money will be refunded promptly to the Buyer and all parties will be released from any further obligation.

**12. LIENS:** Seller represents and warrants that there are no unpaid (whether recorded or not) chattel mortgages, conditional sales contracts, financing statements, or security agreements affecting any fixture, portion of the Real Estate, or item of personal property covered by this Contract. Any existing liens which the Seller is required to remove under this Contract may be paid and discharged from the sale proceeds at closing.

**13. DEED AND DOCUMENTS FOR CLOSING:** In the event a title or abstract company prepares a Deed, Affidavit of No Liens,

Buyer's Initials _____ _____ Seller's Initials _____ _____
Version 12/2021

or other necessary documents to complete this transaction, the charge for the same, in addition to the cost of closing the transaction, will be shared equally between the Buyer and Seller.

**14. REPRESENTATIONS AND RECOMMENDATIONS:** It is hereby agreed and acknowledged by the parties that neither the listing nor selling broker/auctioneer, nor their agents, employees, or associates have made, on their own behalf, any representations or warranties, expressed or implied, with respect to the Real Estate. Any information furnished to either party through the Multiple Listing Service or from any other source should be independently verified by that party before that party relies on such information. Notwithstanding anything herein to the contrary, to the extent any warranties or representations may be found to exist, the warranties or representations are between Seller and Buyer. McCurdy may not be held responsible for the correctness of any such representations or warranties or for the accuracy of the description of the Real Estate. McCurdy is acting solely as broker/auctioneer and is not liable to Seller or Buyer for any damages arising out of or related to this Contract or arising out of or related to either party's failure to abide by the Contract. The provisions of this paragraph will survive closing or termination of this Contract.

**15. INTERIM MAINTENANCE:** Seller agrees to deliver possession of the Real Estate in a like or better condition than it is as of the Effective Date, reasonable wear and tear excepted.

**16. DEFAULT AND REMEDIES:** If, as a result of a default under this Contract, either Seller or Buyer employs an attorney to enforce its rights, the defaulting party will, unless prohibited by law, reimburse the non-defaulting party for all reasonable attorneys' fees, court costs, and other legal expenses incurred by the non-defaulting party in connection with the default. A party will be in default under this Contract if the party fails to comply with any material covenant, agreement, or obligation within any time limits required by this Contract. Following a default, the non-defaulting party will have the following remedies:

    **a.** In the event of a default by the Seller, Buyer may: (i) seek to specifically enforce this Contract and recover damages suffered by Buyer as a result of the delay in the acquisition of the Real Estate; or (ii) terminate this Contract by written notice to Seller and, at Buyer's option, pursue any remedy and damages available at law or in equity. If Buyer elects to terminate this Contract in response to a default by Seller, the Earnest Money will be returned to Buyer, in accordance with state law.

    **b.** In the event of a default by the Buyer, Seller may: (i) seek to specifically enforce this Contract and recover damages suffered by Seller as a result of the delay in the sale of the Real Estate; or (ii) unilaterally terminate this Contract by written notice to Buyer, retain the Earnest Money, and pursue any remedies and damages available at law or in equity, all of which are specifically reserved.

**17. CONDEMNATION OR CHANGE OF CONDITION:** If, before closing, all or any part of the Real Estate is taken by eminent domain or a condemnation proceeding is filed or threatened against the Real Estate or any part thereof, Seller will promptly provide written notice to Buyer of any such event. Upon notice of such occurrence, Buyer may immediately inspect the Real Estate and may, by written notice to Seller within ten days after receiving Seller's notice, terminate this Contract, and should the Contract be terminated for that reason, then the Earnest Money will be refunded promptly to the Buyer and all parties will be released from any further obligation. Unless this Contract is so terminated, it will remain in full force and effect and Seller will, at closing, assign and transfer to Buyer all of Seller's right, title, and interest in and to any awards that may be made for any taking. If a non-material change in condition occurs with respect to the Real Estate, Seller will remedy such change before closing.

**18. FOREIGN INVESTMENT:** Seller represents that Seller is not a foreign person as described in the Foreign Investment in Real Property Tax Act and agrees to deliver a certificate at closing to that effect which will contain Seller's tax identification number.

**19. 1031 EXCHANGE:** Seller and Buyer hereby agree that this transaction may be completed as a like-kind exchange and each party will cooperate with and assist the other party in completing the sale as a like-kind exchange, provided that the cooperating party's tax treatment remains unaffected and any additional costs incurred will be paid by the party requesting the exchange. Buyer has the right at any time prior to closing to assign all or a portion of its rights under this Contract to a "*Qualified Intermediary*" (as that term is defined in Section 1.1031(k)-1(g)(4)(v) of the Treasury Regulations) in order to accomplish the transaction in a manner that will comply, either in whole or in part, with the requirements of a like-kind exchange pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code"). Likewise, Seller has the right at any time prior to closing to assign all or a portion of its rights under this Contract to a *Qualified Intermediary* for the same purpose. In the event a party assigns its rights under this Contract pursuant to this Paragraph, such party agrees to notify the other parties in writing of such assignment at or before closing. If Seller assigns its rights under this Contract for this purpose, Buyer agrees to: (i) consent to Seller's assignment of its rights in this Contract; and (ii) pay the Purchase Price into a qualified escrow or qualified trust account at closing as directed in writing. If Buyer assigns its rights under this Contract for this purpose, Seller agrees to: (i) consent to Buyer's assignment of its rights in this Contract; (ii) accept the Purchase Price from the qualified escrow or qualified trust account at closing; and (iii) at closing, convey and assign directly to Buyer the Real Estate upon satisfaction of the other conditions to closing and other terms and conditions hereof. Seller and Buyer acknowledge and agree that any assignment of this Contract to a *Qualified Intermediary* will not release a party from any of their respective liabilities and obligations to each other under this Contract, and that no party represents to any other that any particular tax treatment will be given to a party as a result thereof.

Buyer's Initials _OA_     Case 22-10139    Doc# 253-1    Filed 12/15/22    Page 4 of 24 Seller's Initials _DCB_ 
Version 12/2021

**20. BROKERAGE FEES:** The party handling the closing is hereby authorized and directed to collect and disburse the brokerage fees at closing.

**21. INDEMNIFICATION:** Seller and Buyer jointly agree to waive, release, indemnify, and hold harmless McCurdy against any and all losses, claims, damages, liabilities, or expenses, including costs of investigation, attorneys' fees, and disbursements, which may be incurred by McCurdy relative to the performance of McCurdy's duties related to the parties, the Real Estate, or the transaction contemplated by this Contract. Seller and Buyer further jointly agree to waive, release, indemnify and hold harmless McCurdy against any and all losses, claims, damages, liabilities, or expenses, including costs of investigation, attorneys' fees, and disbursements claims, related to the conduct or competency of third parties providing specialized services required or permitted by this Contract, including, but not limited to: lenders, title insurance companies, escrow agents, closing agents, or inspectors or repair personnel, whether those services were arranged by the parties or by McCurdy on behalf of either party. The provisions of this paragraph will survive closing or termination of this Contract.

**22. DISPOSITION OF EARNEST MONEY:** Pursuant to K.S.A. § 58-3061(g), upon the deposit of earnest money in a broker's trust account, the deposit may be dispersed only: 1) pursuant to written authorization of a buyer and seller; 2) pursuant to a court order; or 3) when the transaction is closed according to the agreement of the parties. Notwithstanding the language of K.S.A. § 58-3061(g), Buyer and Seller agree to the following procedure: "Notwithstanding any other terms of this contract providing for forfeiture or refund of the earnest money deposit, the parties understand that applicable Kansas real estate laws prohibit the escrow agent from distributing the earnest money, once deposited, without the consent of all parties to this agreement. Buyer and Seller agree that failure by either to respond in writing to a certified letter from broker within seven days of receipt thereof or failure to make written demand for return or forfeiture of an earnest money deposit within 30 days of notice of cancellation of this agreement shall constitute consent to distribution of the earnest money as suggested in any such certified letter or as demanded by the other party hereto."

**23. ASSIGNMENTS:** The parties' rights and obligations under this Contract may not be assigned absent the written consent of the other parties to the Contract. Any costs or fees associated with an assignment of a party's rights and obligations under this Contract will be paid by the assignor. Any assignments must be made within 7 business days of the Effective Date.

**24. TIME:** Time and exact performance is of the essence as to all obligations under this Contract.

**25. AUTHORITY:** Each person executing this Contract warrants and represents that they are fully authorized to do so.

**26. BINDING EFFECT:** This Contract will be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, heirs, executors, administrators, successors, and assigns.

**27. GOVERNING LAW, VENUE, AND JURISDICTION:** This Contract is to be governed by and construed in accordance with the laws of Kansas, but without regard to Kansas's rules governing conflict of laws. Exclusive venue for all disputes lies in either the Sedgwick County Kansas District Court or the United States District Court in Wichita, Kansas. The parties submit to and accept the jurisdiction of such courts.

**28. WAIVER OF JURY TRIAL:** The parties waive the right to trial by jury in all matters regarding this Contract.

**29. MODIFICATION AND NON-WAIVER:** This Contract may be amended only by an agreement, in writing, signed by all the parties. A failure by either party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Contract or to exercise any right or remedy consequent upon a breach thereof will not constitute a waiver of any such breach or any other covenant, duty, agreement, or condition. A waiver upon one or more occasion will not constitute a bar or a waiver of any right or remedy on any future occasion.

**30. SEVERABILITY:** In the event that any provision contained in this Contract is determined to be invalid, illegal, or unenforceable by a court of competent jurisdiction, the validity, legality, and enforceability of the remaining provisions of the Contract will not be in any way impaired.

**31. FURTHER ACTS:** The parties agree to execute and deliver, or cause to be executed and delivered, such further instruments or documents or take such other action as may be necessary or convenient to carry out the intent and purpose of this Contract.

**32. MERGER:** This Contract constitutes the entire agreement between the parties and supersedes any previously executed contracts and representations, verbal or written.

**33. INTERPRETATION:** The headings used in this Contract are for convenience only and do not constitute a part of this Contract. All references in the singular are to be construed to include the plural where applicable and the masculine to include the feminine or

Buyer's Initials _____ *OA*    Case 22-10139    Doc# 253-1    Filed 12/15/22    Page 5 of 24    Seller's Initials _____ *DLB*
Version 12/2021

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

neuter gender where applicable, and all covenants, agreements, and obligations herein assumed by the parties are joint and several covenants, agreements, and obligations. The language used in this Contract is to be deemed to be the language chosen by the parties to express their mutual intent and no rule of strict construction is to be applied against any party. If any date under this Contract on which an event is to occur or notice is to be given falls on a Saturday, Sunday, or federal holiday, then such date will be the first business day following such Saturday, Sunday, or federal holiday.

**34. SIGNATURE BY ELECTRONIC MAIL AND IN COUNTERPART, AGREEMENT TO USE ELECTRONIC SIGNATURES:** This Contract may be executed in any number of counterparts, and each such counterpart will be deemed to be an original instrument, but all such counterparts together will constitute one Contract. The exchange of copies of this Contract and of signature pages by facsimile transmission or as a PDF attached to an email will constitute effective execution and delivery of this Contract as to the parties and may be used in lieu of the original Contract for all purposes. The parties agree that this transaction may be conducted through electronic means in accordance with the Kansas Uniform Electronic Transactions Act (K.S.A. § 16-1601 *et seq.*).

**35. LEGAL COUNSEL:** The form of this Contract has been approved by legal counsel for McCurdy as being legally sufficient to facilitate the sale of the Real Estate. The parties acknowledge that such legal counsel for McCurdy has acted as a scrivener at the direction of McCurdy in the preparation and drafting of this Contract. Each party acknowledges that such party is a sophisticated party in the type of transaction reflected in this Contract and has been advised by independent legal counsel concerning such party's decision to enter into this Contract or has chosen to enter into this Contract without the benefit of legal counsel even though the parties had sufficient opportunity and resources to obtain adequate, independent legal counsel.

**36. LENDER INFORMATION AUTHORIZATION:** Seller hereby authorizes closing agent to obtain payoff information from Seller's lender.

**37. SUBJECT TO COURT APPROVAL:** The parties' obligations under this Contract are contingent upon final approval of the United States Bankruptcy Court for the District of Kansas, Bankr. Case No. 22-10139-11, *In re Andover Senior Care, LLC.*

**38. PERSONAL PROPERTY:** Buyer understands and agrees that purchase of the Real Estate includes certain items of personal property, as listed in Exhibit A—Personal Property Inventory ("Personal Property Inventory"). Buyer further understands and agrees that the attached Personal Property Inventory is approximate and should not be considered the complete inventory of items that will be transferred with the Real Estate, and Seller does not warrant or represent the completeness or accuracy of the Personal Property Inventory.

**39. ADDITIONAL TERMS:**

N/A

Copyright © 2021 McCurdy Real Estate & Auction, LLC

(Remainder of this page intentionally left blank.)

Buyer's Initials _____ OA     Case 22-10139     Doc# 253-1     Filed 12/15/22     Page 6 of 24 _____ DCB
Version 12/2021

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

IN WITNESS WHEREOF, Seller and Buyer execute this Contract on the dates indicated below.

Buyer *Osaginwen Ayiyi, Managing Member*

Seller *Dennis L. Bush, Managing Member*

Print Name  Osaginwen Ayiyi

Print Name  Dennis L. Bush

Title  Managing Member

Title  Managing Member

Company  Called To Care Investments Kansas LLC

Company  Andover Senior Care, LLC, Debtor in Possession, Bankr.Case #22-10139-11

Date  11/30/2022

Date  12/05/2022

**Buyer**

**Seller**

Print Name

Print Name

Title

Title

Company

Company

Date

Date

==================================**For Office Use Only**==================================

*Co-Op/Referring Broker/Licensee – Selling Side*

*McCurdy Real Estate & Auction, LLC*

Agent

Agent  Braden McCurdy

Email

Email  bmccurdy@mccurdy.com

Firm

Email  closing@mccurdy.com

Phone _____ Fax _____

Phone  316-867-3600  Fax

*Title/Closing Company*

*Co-Op/Referring Broker/Licensee – Listing Side*

Company  Security 1st Title

Agent

Address  12031 E. 13th St., Suite B

Email

City/State  Wichita, KS 67206

Firm

Phone _____ Fax _____

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1



| | **ALTA Commitment for Title Insurance** |
| --- | --- |
| | Issued By |
| | **First American Title Insurance Company** |

Commitment No.: KS-R3004583

## Exhibit A

Parcel 1:
Beginning at the Southeast Corner of Lot 3, THE MEADOWS SECOND ADDITION, an Addition to Andover, Butler County, Kansas; thence North 0°00'00" East for 550.00 feet to the Northwest Corner of Lot 1, Block 1, The Meadows Third Addition to Andover, Butler County, Kansas; thence North 89°56'48" West for 80.10 feet to a point, thence South 14° 32'43" East for 157.56 feet to a point, thence South 0°01'31" West for 397.52 feet to a point on the South line of Lot 3, The Meadows Second Addition, thence South 89°56'48" East for 40.70 feet to the point of beginning.

Parcel 2:
Lot 1, Block 1, EXCEPT the East 206.00 feet of the South 257.00 feet thereof, THE MEADOWS THIRD ADDITION, Andover, Butler County, Kansas, a replat of Lot 4, The Meadows Second Addition, Andover, Butler County, Kansas.

*Dennis L. Bush, Managing Member*          12/05/2022

*Osaginwen Ayiyi, Managing Member*          11/30/2022

*This page is only a part of a 2016 ALTA ® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



## Exhibit A - 224 E. Central Personal Property Inventory

- (51) Wire Racks
- (5) Linen Carts
- (4) Speed Queen commercial washers
- (4) Speed Queen commercial dryers
- Knight GT commercial dishwasher
- Atosta Reach In Refrigerator
- Scotman Ice Bin
- Blodgett commercial oven
- Groen warmer
- American Range deep fryer
- (3) Cambro food delivery carts
- (2) Norlake walk in freezers
- Four bin food warmer
- (4) Duke three compartment food warmers
- Three compartment sink
- Two compartment sink
- (3) stainless steel kitchen tables
- Approximately (75) office chairs
- (4) Samsung 36" double door refrigerators
- (2) Panasonic microwaves
- Hamilton Beach microwave
- (3) mini fridges
- Fridgidaire refrigerator
- Whirlpool refrigerator
- (10) office desks
- (8) leather rolling office chairs
- (20) filing cabinets
- (6) wood bookshelves
- (8) barrel chairs
- Check-in desk
- (15) card tables
- Gordon Laughead piano
- (7) leather benches
- (2) Shark vacuums
- Mastercare entrée spa tub
- (2) conference tables
- (2) leather reclining chairs

_Dennis L. Bush, Managing Member_     12/05/2022

_Osaginwen Ayiyi, Managing Member_     11/30/2022

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

- (4) Bosch 800 series washer
- (4) Bosch Axxis dryers
- (4) Invacare Reliant 450 power lifts
- (42) 4 drawer dressers
- (40) nightstands
- (45) medical beds
- (45) rolling bedside tables
- (25) walkers
- (35) wheelchairs
- (10) raised bathroom seats
- Salon Choice hooded hair dryer
- Three seat sofa
- Invacare motorized wheelchair
- Stretcher
- Hydrocollator
- Towel cart
- Lifetime Fitness duel adjustable pulley
- Lifetime Fitness assisted dip chin
- Lifetime Fitness seated leg press
- Lifetime Fitness curl machine
- Lifetime Fitness elliptical
- Lifetime Fitness duel pulley pulldown
- Hammer Strength incline press
- (2) Armedica bariatric mat tables
- Vibrabody Slimmer
- (2) Metron stand in electric table
- Trampoline
- Heathweigh Scale
- (2) Visio 60" tvs
- (50) 36' televisions (Sylvania, Magnavox, Sanyo, Vizio)
- (2) wood half-moon tables
- Bakers rack
- (25) oval mirrors

*Dennis L. Bush, Managing Member*          12/05/2022

*Osaginwen Ayiyi, Managing Member*          11/30/2022

*The above Personal Property Inventory is approximate and should not be considered the complete inventory of items that will be transferred with the Real Estate. Neither Seller nor McCurdy warrant or represent the completeness or accuracy of the personal property inventory list.*

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

Authentisign ID: 64C320AF-BB2F-ED11-AE83-14CB655B2CA7

# PROPERTY TAX INFORMATION


BUTLER COUNTY, KANSAS

**Database was last updated on 04/12/2022**

Return To County Website    Logout

## Tax Statement Details

| Type | CAMA Number | Tax Identification |
|---|---|---|
| RL | 304 17 0 30 03 002 02 0 01 | 001-1217111 |
| **Owner ID** | ANDO00099 ANDOVER SENIOR CARE LLC | Current Taxes |
| **Taxpayer ID** | ANDO00099 ANDOVER SENIOR CARE LLC | Current Real Estate Detail |
| 0 E CENTRAL | 67002 | GIS Map |
| | | Print Friendly Version |

| Subdivision | MEADOWS, (THE) 2ND ADD | Block | Lot(s) | Section 17 | Township 27 | Range 03 |
|---|---|---|---|---|---|---|

**Statement # 0078347 Details**


*Dennis L. Bush, Managing Member*    09/21/2022

*Osaginwen Ayiyi, Managing Member*    11/30/2022

| | |
|---|---|
| Total Assessed Value: | $425,690.00 |
| Total Mill Levy: | 160.77600 |
| General Tax: | $68,394.74 |
| Specials: | $0.00 |
| Total Tax: | $68,394.74 |
| Received To Date: | $34,197.37 |
| Balance: | $34,197.37 |
| Interest To Date: | $0.00 |
| Fees: | $0.00 |
| Total Due: | $34,197.37 |

### Taxes by Tax Districts

- ANDOVER
- BCCC- GENERAL
- BUTLER COUNTY
- STATE OF KANSAS
- USD 385

0.9 %
41.9 %
20.4 %
9.5 %
27.3 %

## Receipt Information

| Receipt # | Date | Tax Year | Tax | Int/Fee |
|---|---|---|---|---|
| 633715 | 12/10/2021 | 2021 | $34,197.37 | $0.00 |

**For delinquent tax pay off amount contact Butler County Treasurer 205 W. Central Ave, El Dorado, KS 67042, (316) 322-4210**

Back To Search Results                                   Back To Search Criteria

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1



Real Estate Information




*This database was last updated on 4/12/2022 at 8:05 PM*

Return to County Website | Log Out

## Parcel Details for 008-304-17-0-30-03-002.02-0 - Printer Friendly Version

**Owner Information**

| | |
|---|---|
| **Owner's Name (Primary):** | ANDOVER SENIOR CARE LLC |
| **Mailing Address:** | 324 W Central Ave # Ste<br>D Andover, KS 67002-9694 |

**Property Address**

| | |
|---|---|
| **Address:** | 224 E Central Ave<br>Andover, KS 67002 |

**General Property Information**

| | |
|---|---|
| **Property Class:** | Residential - R |
| **Living Units:** | |
| **Zoning:** | |
| **Neighborhood:** | 507.7 |
| **Taxing Unit:** | 001 |

**Deed Information**

| Document # | Document Link |
|---|---|
| 2013-9893 | View Deed Information |

AuthentiSIGN
Dennis L. Bush, Managing Member 09/21/2022

AuthentiSIGN
Osaginwen Ayiyi, Managing Member 11/30/2022

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

## Neighborhood / Tract Information

**Neighborhood:** 507.7
**Tract:**
**Section:** 17   **Township:** 27   **Range:** 03E
**Tract Description:** MEADOWS, (THE) 2ND ADD, S17, T27, R03E, ACRES 2.7, BEG SE/C LT 3 W40.7 N397.52 NW157.56 E80.01 S550 TO POB; LT 1 EXC E206 S257 BLK 1 MEADOWS 3RD ADD

## Land Based Classification System

**Function:** Skilled-nursing services
**Activity:** Social, institutional, infrastructure-related activities
**Ownership:** Private-fee simple
**Site:** Developed site - with buildings

## Property Factors

| | | | |
|---|---|---|---|
| **Topography:** | Level - 1 | **Parking Type:** | Off Street - 1 |
| **Utilities:** | All Public - 1 | **Parking Quantity:** | Adequate - 2 |
| **Access:** | Paved Road - 1 | **Parking Proximity:** | On Site - 3 |
| **Fronting:** | Major Strip or CBD - 1 | **Parking Covered:** | |
| **Location:** | Central Business District - 1 | **Parking Uncovered:** | |

## Appraised Values

| Tax Year | Property Class | Land | Building | Total |
|---|---|---|---|---|
| 2022 | Residential - R | 228,500 | 3,784,540 | 4,013,040 |
| 2021 | Residential - R | 223,500 | 3,478,150 | 3,701,650 |
| 2020 | Residential - R | 221,000 | 3,301,560 | 3,522,560 |

## Market Land Information

| Type | Method | Area or Acres | Eff. Frontage | Eff. Depth | Est. Value |
|---|---|---|---|---|---|
| Regular Lot - 1 | Acre | 2.70 | | | 00 |
| **Influence #1:** | | **Influence #2:** | | **Influence Override:** | |
| **Factor:** | | **Factor:** | | **Depth Factor:** | |

_Authentisign_
_Dennis L. Bush, Managing Member_                    09/21/2022


_AuthentiSIGN_
_Osaginwen Ayiyi, Managing Member_                    11/30/2022

| Residential information  [Information Not Available] | 🔼 |
|---|---|

| Residential Information  [Information Not Available] |
|---|

| Commercial Information | 🔼 |
|---|---|

## Building #: 1

**Building Information**

LBCS Structure Code: Nursing home/ adult care facility

Building Name: VICTORIAN FALLS NURSING CENTER

Identical Units: 1

# of Units:

Unit Type:

MS Mult:

MS Zip Code:

View Sketch Vector

**Apartment Information**

| | Units | BR Type | Baths |
|---|---|---|---|
| Apartment #1: | | | |
| Apartment #2: | | | |
| Apartment #3: | | | |
| Apartment #4: | | | |
| Apartment #5: | | | |
| Apartment #6: | | | |
| Apartment #7: | | | |
| Apartment #8: | | | |



*Dennis L. Bush, Managing Member*     09/21/2022

*Osaginwen Ayiyi, Managing Member*     11/30/2022

Black   = Original

### Building Sections & Basements

| # | MS Occup | Class | Rank | Year Built | Effective Year | Levels | Stories | Area | Perim | Hgt | Phys Cond | Func | Ovr Econ | Ovr % | Reason | Use | Depr Class | RCN | % Good | MS Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Convalescent Hospital | AV+ | | 2010 | 01 / 01 | 01 | 3 | 31,984 | 1,400 | 9 | AV | AV | | | | Nursing Home - 054 | Residential | 5,023,554 | 67 | 3,365,780 |

#### Section Components

| Code Code Description | Unit Type | Units | Pct % | Other | Rank | Year | Comment |
|---|---|---|---|---|---|---|---|
| 612 Warmed and Cooled Air | | | 20 | | | | |
| 616 Ind Thu-Wall Heat Pump | | | 80 | | | | |
| 651 Passenger # | | | | | 1 | 3 | |
| 683 Wet Sprinklers | | | 100 | | | | |
| 882 Stud -Brick Veneer | | | 67 | | | | |
| 885 Stud -EIFS (Synthetic Stucco) | | | 33 | | | | |
| 8002 Porch, Open Slab | | | | 8,001 | | | |
| 8065 Canopy, Retail Wood Frame | | | 90 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 90 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 63 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 63 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 12 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 12 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 12 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 12 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 24 | | | | |
| 8065 Canopy, Retail Wood Frame | | | 24 | | | | |

| 8065 | Canopy, Retail Wood Frame | 93 |
| 8065 | Canopy, Retail Wood Frame | 93 |
| 8065 | Canopy, Retail Wood Frame | 93 |
| 8065 | Canopy, Retail Wood Frame | 49 |

*Dennis L. Bush, Managing Member*

09/21/2022

*Osaginwen Ayiyi, Managing Member*

11/30/2022

| 2Convalescent Hospital | AV+ 2010 | 02 / 02 | 3,570 284 | 8 | AV AV | Nursing Residential Home - 054 | 550,030 67 368,520 |

**Section Components**

| Code | Code Description | Unit Type | Units | Pct % | Other | Rank | Year | Comment |
|------|------------------|-----------|-------|-------|-------|------|------|---------|
| 612 | Warmed and Cooled Air | | | 100 | | | | |
| 683 | Wet Sprinklers | | | 100 | | | | |
| 890 | Stud –Shingles | | | 100 | | | | |

---

**Other Building Improvement Information**

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | D | AV | 1 | 1997 | | | 10 | | 8 | | 1 | AV | AV | | | | 4674 | 9 | 420 |

**Components**

| Code | Code Description | | | | | Units | | | | Percentage % | Area | | | Other | | Rank | | Year |
|------|------------------|--|--|--|--|-------|--|--|--|-------------|------|--|--|-------|--|------|--|------|
| 6605071 | | | | | | 24 | | | | | | | | 2 | | | | |
| 6605067 | | | | | | 2 | | | | | | | | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | A | AV | 1 | 1997 | | | 10 | | 8 | | 1 | AV | AV | | | | 25819 | 19 | 4910 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 8350 | | 7,093 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | B | AV | 1 | 1997 | | | 10 | | 8 | 32 x 18 | 1 | AV | AV | | | | 3099 | 16 | 500 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 8355 | | 576 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | D | AV | 1 | 1997 | | | 10 | | 8 | 48 x 6 | 1 | AV | AV | | | | 1136 | 9 | 100 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 6605003 | | 48 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | A | AV | 1 | 2010 | | | 10 | | 8 | | 1 | AV | AV | | | | 86395 | 32 | 27650 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 8350 | | 23,735 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | D | AV | 1 | 2010 | | | 10 | | 8 | | 1 | AV | AV | | | | 47411 | 13 | 6160 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 6605071 | | 14 | | | 24 | | |
| 6605063 | | 16 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | B | AV | 1 | 2010 | | | 10 | | 8 | | 1 | AV | AV | | | | 6983 | 16 | 1120 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 8355 | | 1,298 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | D | AV | 1 | 2010 | | | 10 | | 8 | 162 x 5 | 1 | AV | AV | | | | 8392 | 13 | 1090 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 6604032 | | 810 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | D | AV | 1 | 2010 | | | 10 | | 8 | 177 x 4 | 1 | AV | AV | | | | 7335 | 13 | 950 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 6604032 | | 708 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | D | AV | 1 | 2010 | | | 10 | | 8 | 60 x 7 | 1 | AV | AV | | | | 8963 | 13 | 1170 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 6604050 | | 420 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | B | AV | 1 | 2013 | | | 10 | | 8 | | 1 | AV | AV | | | | 19906 | 18 | 3580 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 8355 | | 3,700 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Site Improvements | D | AV | 1 | 2014 | | | 10 | | 8 | 433 x 6 | 1 | AV | AV | | | | 10245 | 22 | 2250 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|
| 6605003 | | 433 | | | | | |

| Occup | MS Class | Rank | Quantity | Year Built | Effective Year | LBCS | Area | Perim | Hgt | Dimensions (L x W) | Stories | Phys Cond | Func | Econ | Ovr % | Ovr Reason | RCN LD | % Good | MS Value |
|-------|----------|------|----------|-----------|----------------|------|------|-------|-----|--------------------|---------|-----------|------|------|-------|-----------|--------|--------|----------|
| Prefabricated Storage Shed | D | AV | 1 | 2017 | | | 80 | 36 | 6 | 8 x 10 | 1 | AV | | | | | 1783 | 19 | 340 |

**Components**

| Code | Code Description | Units | Percentage % | Area | Other | Rank | Year |
|------|------------------|-------|-------------|------|-------|------|------|

---

**Agricultural Information   [Information Not Available]**

This parcel record was last updated on 4/13/2022 at 6 am.

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1



# COMMERCIAL PROPERTY
# DISCLOSURE STATEMENT

Document updated:
April 2015

KANSAS ASSOCIATION
O F   R E A L T O R S®

**SELLER:** Dennis and Debie Bush, as sole members of Andover Senior Care, LLC, the debtor-in-possession pursuant to In re Andover Senior Care, LLC, United States Bankruptcy Court for the District of Kansas Case No. 22-10139-11

**DATE:**

**PROPERTY ADDRESS:** 224 E. Central Ave. - Andover, KS 67002

## Part 1. MESSAGE TO THE SELLER:

### 1. SELLER'S AGREEMENT AND AUTHORIZATIONS:

A. This form is designed to assist you in making disclosures to the BUYER. If you have actual knowledge of a condition on or affecting the Property, then you must disclose that information to the BUYER on this Commercial Property Disclosure Statement (the "Statement").

B. SELLER discloses the information on this Statement with the knowledge that even though it is not a warranty or guarantee of the condition of the Property, prospective BUYER(S) may rely on the information contained in this Statement in deciding whether, and on what terms and conditions, to purchase the Property.

C. SELLER authorizes any real estate licensees involved in this transaction to provide a copy of this Statement to any person or entity in connection with any actual or possible purchase of the Property.

### 2. SELLER'S INSTRUCTIONS:

A. SELLER has an obligation under this Statement to:
   (1) Review this Statement and any attachments carefully:
   (2) Verify all the important information concerning the Property;
   (3) Attach all available supporting documentation on the Property;
   (4) Use explanations lines as requested and when necessary; and
   (5) Use the explanation lines to explain when the SELLER does not have the personal knowledge to answer a question.

B. By signing this Statement, the SELLER agrees and acknowledges that the failure to disclose known material facts about the Property may result in liability to the BUYER for fraud and misrepresentation.

### 3. SELLER'S INDEMNIFCATION OF REAL ESTATE LICENSEES:

A. SELLER agrees to hold harmless, indemnify and defend any real estate licensees involved in this transaction and their agents, subagents, employees and independent contractors from and against any and all claims, demands, suits, damages, losses or expenses arising out of the discovery of property conditions in the Property of which the real estate licensees had no actual knowledge prior to the signing of the Contract to sell the Property.

———————————— ————————————
SELLER'S INITIALS            SELLER'S INITIALS

## Part 2. MESSAGE TO THE BUYER:

### 1. BUYER'S AGREEMENT AND AUTHORIZATIONS:

A. This Statement is a disclosure of the condition of the Property as it is actually known by the SELLER on the date that the Statement was signed.

B. BUYER agrees and acknowledges that this Statement is not a warranty or guarantee of any kind by the SELLER or any real estate licensees involved in this transaction regarding the condition of the Property and should not be used as a substitute for any inspections or warranties the BUYER(S) may wish to obtain on the Property.

Commercial Property
Disclosure Statement

Case 22-10139   Doc# 258-1   Page 1 of 6   Filed 12/15/22   Page 16 of 24

Copyright © 2015
Kansas Association of REALTORS®

InstanetFORMS

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

**2. BUYER'S INSTRUCTIONS:**

    A.   BUYER has an obligation under this Statement to:

        (1)  Review this Statement and any attachments carefully;

        (2)  Verify all the important information about the condition of the Property contained in this Statement;

        (3)  Ask the SELLER about any incomplete or inadequate responses;

        (4)  Inquire about any concerns about the condition of the Property not addressed on this Statement;

        (5)  Review all other applicable documents concerning the Property;

        (6)  Conduct personal or professional inspections of the Property; and

        (7)  Investigate the surrounding areas of the Property to determine suitability for the BUYER.

    B.   By signing this Agreement, the BUYER agrees and acknowledges that the failure to exercise due diligence to inspect the Property and verify the information about the condition of the Property contained in this Statement may affect the ability of the BUYER to hold the SELLER liable for conditions on the Property.

**3. BUYER'S AGREEMENT TO HOLD REAL ESTATE LICENSEES HARMLESS:**

    A.   BUYER agrees that any real estate licensees involved in this transaction are not experts at detecting or repairing physical defects in and on the Property. BUYER agrees to hold harmless any real estate licensees involved in this lease transaction and their agents, subagents, employees and independent contractors from and against any and all claims, demands, suits, damages, losses or expenses arising out of the discovery of property conditions in the Property of which the real estate licensees had no actual knowledge prior to the signing of the Contract to purchase the Property.

_____*OA*_____      _____

BUYER'S INITIALS       BUYER'S INITIALS

**Part 3. GENERAL PROPERTY INFORMATION:**

1.   Approximate age of the Property:  *12 YEARS*

2.   Appropriate date that SELLER acquired the Property:  *Built in 2010*

3.   Does the SELLER currently occupy the Property? ☒ Yes ☐ No

    A.  If No, has the SELLER ever occupied the Property? ☐ Yes ☐ No

4.   Is the SELLER current on the following assessments, charges, fees or payments relating to the Property:

    A.  Mortgage payments? ☐ Yes ☒ No

    B.  Property taxes? ☒ Yes ☐ No

    C.  Special assessments? ☒ Yes ☐ No

    D.  Other: _____ ☐ Yes ☐ No

5.   What is the current zoning of the Property?

    *Commercial*

6.   Are you aware of:

    A.  Any violation of zoning, setbacks or restrictions or of a non-conforming use on the Property? ☐ Yes ☒ No

    B.  Any declarations, deed restrictions, plan or plat requirements that have authority over the Property? ☐ Yes ☒ No

    C.  Any violation of laws or regulations affecting the Property? ☐ Yes ☒ No

    D.  Any existing or threatened legal action pertaining to the Property? ☐ Yes ☒ No

    E.  Any litigation or settlement pertaining to the Property? ☐ Yes ☒ No

    F.  Any current or future special assessments pertaining to the Property? ☐ Yes ☒ No

    G.  Any other conditions that may materially and adversely affect the value or desirability of the Property? ☐ Yes ☒ No

    H.  Any other condition that may prevent you from completing the sale of the Property? ☐ Yes ☒ No

Commercial Property Disclosure Statement

Page 2 of 6

Copyright © 2015 Kansas Association of REALTORS®

InstanetFORMS

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

I. Any leases on the Property? ☐ Yes ☒ No

If Yes, please attach a copy of each lease agreement and describe the tenant's rights and obligations under the leases:

J. Any party currently in possession of the Property or a portion of the Property other than the SELLER? ☐ Yes ☒ No

K. Any construction, landscaping or surveying done on the Property within the last six months? ☐ Yes ☒ No

L. Any additions, alterations, repairs or structural modifications made without the necessary permits? ☐ Yes ☒ No

M. Any nuisance or other problems originating within the general vicinity of the Property? ☐ Yes ☒ No

N. Any notices of nuisance abatement, citations or investigations regarding the Property? ☐ Yes ☒ No

O Any recent reappraisal, reclassification or revaluation of the Property for property tax purposes? ☐ Yes ☒ No

P. Any public authority contemplating condemnation proceedings? ☐ Yes ☒ No

Q. Any government rule limiting the future use of the Property other than existing zoning regulations? ☐ Yes ☒ No

R. Any government plans or discussion of public projects that could lead to the formation of a special benefit assessment district covering the Property or any portion of the Property? ☐ Yes ☒ No

S. Any interest in all or part of the Property that has been reserved by the previous owner? ☐ Yes ☒ No

T. Any unrecorded interests affecting the Property? ☐ Yes ☒ No

U. Anything that would interfere in passing clear title to the BUYER? ☐ Yes ☒ No

V. If you have answered "Yes" to any of the questions in 6(A) through (V), please attach documentation and explain here:

W. Additional Comments:

## Part 4. STRUCTURAL CONDITIONS:

1. Have there been any leaking or other problems with the roof, flashing or rain gutters? ☐ Yes ☒ No
   A. If Yes, what was the date of the occurrence?: _____ *New Roof 2021*
2. Have there been any repairs to the roof, flashing or rain gutters? ☒ Yes ☐ No
   A. If Yes, please provide the date of the repairs?: _____ *New Roof 2021*
3. Has there been any damage to the Property due to wind, fire or flood? ☐ Yes ☒ No
4. Are there any structural problems with the Property? ☐ Yes ☒ No
5. Is there any exposed wiring presently in any structures on the Property? ☐ Yes ☒ No
6. Are there any windows or doors that leak or have broken seals? ☐ Yes ☒ No
7. Do you have any knowledge of any damage to the Property caused by termites or wood infestation? ☐ Yes ☒ No
   A. If Yes, is the Property currently under warranty? ☐ Yes ☐ No
   B. If Yes, please name the company here: _____
8. Have you ever experienced or are you aware of any:
   A. Movement, shifting, deterioration or other problems with the basement, foundation or walls? ☐ Yes ☒ No
   B. Corrective action taken to remedy these conditions, including but not limited to bracing or piercing? ☐ Yes ☒ No
   C. Water leakage or dampness in the Property? ☐ Yes ☒ No
   D. Dry rot, wood rot or similar conditions on the wood of the Property? ☐ Yes ☒ No
   E. Problems with driveways, fences, patios or retaining walls on the Property? ☐ Yes ☒ No
   F. Any failure of the Property to comply with the Americans with Disabilities Act? ☐ Yes ☒ No

Commercial Property
Disclosure Statement

Case 22-10139   Doc# 253-1   Filed 12/15/22   Page 18 of 24

Page 3 of 6

Copyright © 2015
Kansas Association of REALTORS®

Instanet FORMS

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

9.  If you have answered Yes to any of the questions in this Part 4, attach any written documentation and explain here:

10. Additional Comments:

## Part 5. LAND CONDITIONS:

1.  Is the Property or any portion of the Property located in a flood zone, wetlands area or proposed to be located in such as designated by the Federal Emergency Management Agency(FEMA)? ☐ Yes ☒ No
2.  Are you aware of any drainage or flood problems on the Property or adjacent properties? ☐ Yes ☒ No
3.  Have any neighbors complained that the Property causes drainage problems? ☐ Yes ☒ No
4.  Is there fencing on the Property? ☒ Yes ☐ No
    If Yes, does the fencing belong to the Property? ☒ Yes ☐ No
5.  Are you aware of any encroachments, boundary line disputes or non-utility easements affecting the Property? ☐ Yes ☒ No
6.  Are there any features of the Property shared in common with adjoining landowners, such as walls, fences, roads or driveways? *Lawn Sprinkler System* ☒ Yes ☐ No
    If Yes, is the Property owner responsible for the maintenance of any such shared features? ☐ Yes ☒ No
7.  Are you aware of any expansive soil, fill dirt, sliding, settling, earth movement, upheaval or earth stability problems that have occurred on the Property or in the immediate vicinity of the Property? ☐ Yes ☒ No
8.  If you have answered Yes to any of the questions in this Part 5, attach any written documentation and explain here:

9.  Additional Comments:

## Part 6. WATER AND SEWAGE SYSTEMS:

1.  What is the water source on the Property? ☒ Public Water ☐ Private Water ☐ Well ☐ Cistern ☐ Other ☐ None
2.  Does the Property have any sewage facilities on or connected to it? ☐ Yes ☒ No
3.  Are you aware of any problems relating to the water systems or sewage facilities on the Property? ☐ Yes ☒ No
    If Yes, please explain:

4.  Additional Comments:

Commercial Property
Disclosure Statement

Case 22-10139    Doc# 253-1    Filed 12/15/22    Page 19 of 24
Page 4 of 6

Copyright © 2015
Kansas Association of REALTORS®

InstanetFORMS

## Part 7. ELECTRICAL/GAS/HEATING AND COOLING SYSTEMS:

1. Is there electrical service connected to the Property?    ☒ Yes ☐ No
2. Does the Property have heating systems?    ☒ Yes ☐ No
   A. If Yes, please specify:   ☒ Electrical ☐ Fuel Oil ☐ Natural Gas ☐ Heat Pump ☐ Propane ☐ Other _____
3. Does the Property have air conditioning?    ☒ Yes ☐ No
   A. If Yes, please specify:    ☐ Central Electric ☐ Central Gas ☐ Heat Pump ☐ Window Unit(s)
4. Does the Property have a water heater?    ☒ Yes ☐ No
   A. If Yes, please specify:    ☒ Electric ☐ Gas ☐ Solar
5. Are you aware of any problems relating to the electrical, gas or heating and cooling systems on the Property?   ☐ Yes ☒ No
   If Yes, please explain:

6. Additional Comments:

## Part 8. HAZARDOUS CONDITIONS:

1. Are you aware of any existing hazardous conditions on the Property or adjacent properties (e.g. methane gas, radon gas, mold, methamphetamine production, radioactive material, landfill or toxic materials)?   ☐ Yes ☒ No
2. Are you aware of any methamphetamine or other controlled substances being manufactured, stored or used on the Property?   ☐ Yes ☒ No
3. Are you aware of any previous disposal of any hazardous waste products, chemicals, polychlorinated biphenyls (PCBs), hydraulic fluids, solvents, paints, illegal or other drugs or insulation on the Property?   ☐ Yes ☒ No
4. Are you aware of any other environmental conditions on the Property?   ☐ Yes ☒ No
5. Have any other environmental inspections or tests been conducted on the Property?   ☐ Yes ☒ No
6. Are you aware of any aboveground or underground storage tanks on this Property?   ☐ Yes ☒ No
7. If you have answered Yes to any of the questions in this Part 8, attach any written documentation and explain here:

8. Additional Comments:

InstanetFORMS

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1

**Part 9. APPLIANCES, EQUIPMENT AND FIXTURES:**

Indicate the condition of the following items by marking the appropriate box. Check only one box.

|  | | NOT INCLUDED | WORKING | NOT WORKING |  | | NOT INCLUDED | WORKING | NOT WORKING |
|---|---|---|---|---|---|---|---|---|---|
| 1. | Air conditioning – central system | ☐ | ☒ | ☐ | 9. | Lawn sprinkler(s) (No Well) | ☐ | ☒ | ☐ |
| 2. | Air conditioning – window units | ☐ | ☒ | ☐ | 10. | Security gate(s) | ☒ | ☐ | ☐ |
| 3. | Air purifier system | ☐ | ☒ | ☐ | 11. | Security system(s) | ☒ | ☐ | ☐ |
| 4. | Dock leveler | ☒ | ☐ | ☐ | 12. | Smoke detector(s) | ☐ | ☒ | ☐ |
| 5. | Elevator | ☐ | ☒ | ☐ | 13. | Wiring system | ☐ | ☒ | ☐ |
| 6. | Exhaust fans – Bathrooms | ☐ | ☒ | ☐ | 14. | Other: _____ | ☐ | ☐ | ☐ |
| 7. | Fire alarm(s) | ☐ | ☒ | ☐ | 15. | Other: _____ | ☐ | ☐ | ☐ |
| 8. | Fire sprinkler(s) | ☐ | ☒ | ☐ | 16. | Other: _____ | ☐ | ☐ | ☐ |

**Part 10. ACKNOWLEDGEMENT AND AGREEMENT:**

1. The information provided in this Statement is the representation of the SELLER and not the representation of any real estate licensees involved in this transaction. Once the Statement is signed by both the BUYER and the SELLER, the information contained in the Statement will become part of any Contract to purchase the Property between the BUYER and SELLER.

2. The information provided in this Statement has been furnished by the SELLER, who certifies to the truth thereof to the best of SELLER'S belief and knowledge, as of the date signed by the SELLER. Any substantive changes subsequent to initial completion of the Statement will be disclosed by the SELLER to the BUYER prior to the signing of the Contract to purchase the Property.

3. BUYER acknowledges that BUYER has read and received a signed copy of the Statement from the SELLER, the SELLER'S agent or any real estate licensees involved in this transaction.

4. BUYER agrees that BUYER has carefully inspected the Property. Subject to any inspections allowed under the Contract to purchase the Property with the SELLER, BUYER agrees to purchase the Property in its present condition only and without warranties or guarantees of any kind by the SELLER or any real estate licensee concerning the condition of the Property.

5. BUYER agrees to verify any of the above information that is important to the BUYER by an independent investigation. BUYER has been advised to have the Property examined by professional inspectors.

6. BUYER acknowledges that neither the SELLER nor any real estate licensees involved in the transaction are experts at detecting or repairing physical defects in the Property. BUYER states that no important representations of the BUYER or any real estate licensees involved in this transaction concerning the condition of the Property are being relied upon by the BUYER except as disclosed above or as fully set forth as follows and signed by the SELLER in this Statement or by real estate licensees in a separate document:

**CAREFULLY READ THE TERMS OF THIS AGREEMENT BEFORE SIGNING. WHEN SIGNED BY ALL PARTIES, THIS DOCUMENT BECOMES PART OF A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING.**

| _Andover SK Care, LLC_ 9/27/22 | _Osaginwen Ayiyi, Managing Member_ | 11/30/2022 |
|---|---|---|
| SELLER'S SIGNATURE          DATE | BUYER'S SIGNATURE | DATE |

| _____ | _____ | |
|---|---|---|
| SELLER'S SIGNATURE          DATE | BUYER'S SIGNATURE          DATE | |

Commercial Property
Disclosure Statement

Copyright © 2015
Kansas Association of REALTORS®

Page 9 of 6

InstanetFORMS

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1
Authentisign ID: 64C320AF-BB2F-ED11-AE83-14CB655B2CA7



# WATER WELL AND WASTEWATER SYSTEM INFORMATION

Property Address: __224 E. Central Ave. - Andover, KS 67002__

**DOES THE PROPERTY HAVE A WELL?** YES _____ NO ___◉___

    If yes, what type?   Irrigation _____  Drinking _____  Other _____

    Location of Well: _____

**DOES THE PROPERTY HAVE A LAGOON OR SEPTIC SYSTEM?** YES _____ NO ___◉___

    If yes, what type?   Septic _____  Lagoon _____

    Location of Lagoon/Septic Access: _____

_Dennis L. Bush, Managing Member_        09/21/2022
Owner                                        Date

_____       _____
Owner                                        Date

_Osaginwen Ayiyi, Managing Member_      11/30/2022

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1



# REAL ESTATE BROKERAGE RELATIONSHIPS

Kansas law requires real estate licensees to provide the following information about brokerage relationships to prospective sellers and buyers at the first practical opportunity. This brochure is provided for informational purposes and does not create an obligation to use the broker's services.

**Types of Brokerage Relationships:** A real estate licensee may work with a buyer or seller as a seller's agent, buyer's agent, or transaction broker. The disclosure of the brokerage relationship between all licensees involved and the seller and buyer must be included in any contract for sale and in any lot reservation agreement.

**Seller's Agent:** The seller's agent represents the seller only, so the buyer may be either unrepresented or represented by another agent. In order to function as a seller's agent, the broker must enter into a written agreement to represent the seller. Under a seller agency agreement, all licensees at the brokerage are seller's agents unless a designated agent is named in the agreement. If a designated agent is named, only the designated agent has the duties of a seller's agent and the supervising broker of the designated agent functions as a transaction broker.

**Buyer's Agent:** The buyer's agent represents the buyer only, so the seller may be either unrepresented or represented by another agent. In order to function as a buyer's agent, the broker must enter into a written agreement to represent the buyer. Under a buyer agency agreement, all licensees at the brokerage are buyer's agents unless a designated agent is named in the agreement. If a designated agent is named, only the designated agent has the duties of a buyer's agent and the supervising broker of the designated agent functions as a transaction broker.

**A Transaction Broker** is not an agent for either party and does not advocate the interests of either party. A transaction brokerage agreement can be written or verbal.

**Duties and Obligations:** Agents and transaction brokers have duties and obligations under K.S.A. 58-30,106, 58-30,107, and 58-30,113, and amendments thereto. A summary of those duties are:

**An Agent**, either seller's agent or buyer's agent, is responsible for performing the following duties:
• promoting the interests of the client with the utmost good faith, loyalty, and fidelity
• protecting the clients confidences, unless disclosure is required
• presenting all offers in a timely manner
• advising the client to obtain expert advice
• accounting for all money and property received
• disclosing to the client all adverse material facts actually known by the agent
• disclosing to the other party all adverse material facts actually known by the agent

**The transaction broker** is responsible for performing the following duties:
• protecting the confidences of both parties
• exercising reasonable skill and care
• presenting all offers in a timely manner
• advising the parties regarding the transaction
• suggesting that the parties obtain expert advice
• accounting for all money and property received
• keeping the parties fully informed
• assisting the parties in closing the transaction
• disclosing to the parties all adverse material facts actually known by the transaction broker

**Agents and Transaction Brokers** have no duty to:
• conduct an independent inspection of the property for the benefit of any party
• conduct an independent investigation of the buyer's financial condition
• independently verify the accuracy or completeness of statements made by the seller, buyer, or any qualified third
• party.

**General Information:** Each real estate office has a supervising broker or branch broker who is responsible for the office and the affiliated licensees assigned to the office. Below are the names of the licensee providing this brochure, the supervising/branch broker, and the real estate company.

McCurdy Auction, LLC

_____        *Osaginwen Ayiyi, Managing Member*_____ 11/30/2022
Licensee                                                                    Buyer/Seller Acknowledgement (not required)

Braden McCurdy,
Supervising/Branch broker

Authentisign ID: DE343403-F870-ED11-ADE6-0050F2765AB1



# WIRE FRAUD ALERT

# CALL BEFORE YOU WIRE FUNDS

## PROTECT YOUR MONEY WITH THESE TWO STEPS

1. At the first meeting with your Realtor®, obtain the phone number of your real estate agent and your escrow officer.
2. PRIOR to wiring funds, call the known phone number to speak directly with your escrow officer to confirm wire instructions.

## WHAT TO EXPECT FROM SECURITY 1ST TITLE WHEN YOU WIRE FUNDS.

1. To protect your business and customer's information, we will only provide wire instructions to the customer.
2. We will NOT randomly send wire instructions without a request from the customer.
3. We will NOT provide wire instructions if we do not have a signed **Wire Fraud Alert Form** for the party requesting the wire instructions.
4. We will NOT change the wire instructions in the middle of the transaction.
5. If a Buyer/Seller does receive wire instructions:
   • Wire instructions will be given verbally over the phone or sent securely via secured email.
   • The customer needs to verify our phone number at a trusted source like our website, security1st.com
   • Before sending funds, they need to call the verified office number to verify the wire instructions.

## NEVER WIRE FUNDS WITHOUT FIRST CALLING A KNOWN NUMBER FOR YOUR ESCROW OFFICER TO CONFIRM THE WIRE INSTRUCTIONS. DO NOT RELY ON EMAIL COMMUNICATIONS.

The undersigned, hereby authorizes Security 1st Title to communicate regarding my real estate closing transaction via electronic communications (cell phone number, e-mail or text message). I understand that this means Security 1st Title will only communicate with me via the authorized cell phone number and email address listed below.

I also acknowledge receipt of this notice and the risks associated with, and the vulnerabilities of electronic transfer of funds. The undersigned further agree that if electronic transfer of funds is utilized in this transaction, they hereby hold Security 1st Title harmless from all claims arising out of inaccurate transfer instructions, fraudulent taking of said funds and/or any other damage relating to the conduct of third parties influencing the implementation of transfer instructions.

*Osaginwen Ayiyi, Managing Member*
_____
Buyer/Seller Name

11/30/2022
_____
Buyer/Seller Name

_____
Authorized Email Address

_____
Authorized Email Address

_____
Authorized Phone Number

_____
Authorized Phone Number

224 E. Central Ave, Andover, KS 67002
_____
Property Address

3004583
_____
File Number

FOR MORE INFORMATION ON WIRE-FRAUD SCAMS OR TO REPORT AN INCIDENT, PLEASE REFER TO THE FOLLOWING LINKS:
**Federal Bureau of Investigation:** http://www.fbi.gov    **Internet Crime Complaint Center:** http://www.ic3.gov